

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2009

# USA v. John Doe

Precedential or Non-Precedential: Precedential

Docket No. 08-3968

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. John Doe" (2009). *2009 Decisions.* Paper 1417.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1417

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3968
No. 08-4028
_____

UNITED STATES OF AMERICA

v.

JOHN DOE,

Appellant in 08-3968
_____

UNITED STATES OF AMERICA

v.

JANE DOE,

Appellant in 08-4028
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 05-cr-00547-002; 05-cr-00547-003)

District Judge: Honorable Anita B. Brody
_____

Argued January 7, 2009
_____

Before: FUENTES, FISHER and ALDISERT, <u>Circuit Judges</u>
(Filed: April 30, 2009)


Maureen Kearney Rowley
David L. McColgin
Sarah S. Gannett (Argued)
Federal Community Defender Office
For the Eastern District of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA 19106

      Counsel for Appellants

Laurie Magid
Robert A. Zauzmer
Bernadette A. McKeon (Argued)
Joseph Whitehead, Jr.
Office of the United States Attorney
Suite 1250
615 Chesnut Street
Philadelphia, PA 19106

      Counsel for Appellee

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The Appellants, John and Jane Doe,[1] appeal the Eastern District of Pennsylvania's denial of their 18 U.S.C. § 3582(c)(2) motions for reduction of sentence. On February 1, 2007, both Appellants pled guilty to conspiracy to distribute, and distribution of, crack cocaine. The Appellants were granted significant substantial-assistance departures below both their statutorily required minimums and below their pre-amendment Guideline ranges. After the United States Sentencing Commission passed Amendment 706, which lowered the U.S.S.G. § 2D1.1 base offense levels for most quantities of crack cocaine by two levels, the Appellants moved the District Court to further reduce their sentences. The District Court denied their motions. On appeal, the Appellants argue that the District Court erred in denying their motions because: 1) they were sentenced to a term of imprisonment that was, at least in part, based on a sentencing range that has subsequently been lowered; 2) the applicable policy statement, found at U.S.S.G. § 1B1.10, is in conflict with the plain text of § 3582(c)(2); 3) the District Court

---

[1] The Appellants' unopposed motion to proceed under pseudonym was granted on January 7, 2009.

3

misconstrued U.S.S.G. § 1B1.10; 4) U.S.S.G. § 1B1.10 is merely advisory after Booker v. Washington, 543 U.S. 220 (2005); and 5) the District Court failed to weigh the equities and consider the rule of lenity in its decision. We will affirm.[2]

## I.

John and Jane Doe each pled guilty to one count of conspiracy to distribute crack cocaine (21 U.S.C. § 846) and one count of distribution of crack cocaine (21 U.S.C. § 841(a)(1)), and entered into cooperation plea agreements with the government. John Doe's U.S.S.G. § 2D1.1 base offense level for these convictions was 34. He received a two-level increase for his role in the offense, and a three-level reduction for acceptance of responsibility, resulting in a total adjusted offense level of 33. His criminal history was category II. Accordingly, this produced a Guidelines sentencing range of 151-188 months of imprisonment. John Doe, however, was also subject to a statutory mandatory minimum sentence of life in prison because of prior drug convictions. As the mandatory minimum sentence exceeded the Guidelines range, the mandatory minimum became the Guidelines sentence,

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 18 U.S.C. § 1291. This Court exercises plenary review over a district court's interpretation of a provision of law. United States v. Wood, 526 F.3d 82, 85 (3d Cir. 2008).

pursuant to U.S.S.G. § 5G1.1.[3]

This mandatory minimum Guidelines sentence was not applied to John Doe, however, because of substantial assistance he provided to the government. The government moved for a downward departure from the mandatory minimum sentence pursuant to 18 U.S.C. § 3553(e) and from the Guidelines range pursuant to U.S.S.G. § 5K1.1. The District Court ultimately sentenced John Doe, on August 16, 2007, to 84 months imprisonment, a sentence well below both the mandatory minimum Guidelines sentence and the otherwise applicable Guidelines range.

Jane Doe's U.S.S.G. § 2D1.1 base offense level for these convictions was 34. She received a three-level reduction for acceptance of responsibility, resulting in a total adjusted offense level of 31. Her criminal history was category II. Accordingly, this produced a Guidelines sentencing range of 121-151 months of imprisonment. Jane Doe, however, was also subject to a statutory mandatory minimum sentence of twenty years, due to a prior drug conviction. As the mandatory minimum sentence exceeded the Guidelines range, the mandatory minimum became the Guidelines sentence, pursuant to U.S.S.G. § 5G1.1.

---

[3] "Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b).

This mandatory minimum Guidelines sentence was not applied to Jane Doe, however, because, like John Doe, she yielded substantial assistance to the government. The government moved for a downward departure from the mandatory minimum sentence pursuant to § 3553(e) and from the Guidelines range pursuant to U.S.S.G. § 5K1.1. The District Court ultimately sentenced Jane Doe, on May 17, 2007, to 41 months imprisonment, a sentence well below both the mandatory minimum Guidelines sentence and the otherwise applicable Guidelines range.

On November 1, 2007 – subsequent to the Appellants' sentencings – the United States Sentencing Commission passed Amendment 706, which changed U.S.S.G. § 2D1.1 by lowering the base offense levels for most quantities of crack cocaine by two levels. See U.S.S.G. Supp. to App. C. amend. 706. On December 11, 2007, the Sentencing Commission made Amendment 706 retroactive by including it in the list of retroactive amendments in § 1B1.10(c) of the Guidelines. U.S.S.G. App. C. amend. 713.

Subsequently, both Appellants filed motions for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) provides that, in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered, the court may reduce the term of imprisonment if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. The District Court

applied § 3582(c)(2) and found that a sentence reduction was not consistent with the applicable policy statements issued by the Sentencing Commission. The District Court therefore denied the Appellants' motions on September 15, 2008.

## II.

In 18 U.S.C. § 3582(c), Congress mandated that courts "may not modify a term of imprisonment once it has been imposed." Congress did provide exceptions to this general rule, one of which, § 3582(c)(2), provides,

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 984(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

As the District Court correctly identified, a defendant

7

is eligible for a sentence reduction under § 3582(c)(2) only when two elements are satisfied: First, the defendant must have been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission;" and second, the sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." If a defendant fails to satisfy both requirements, a district court lacks jurisdiction to consider a sentence reduction. We agree with the District Court that the Appellants fail to satisfy the second requirement, and we decide this case solely on that ground.

The Sentencing Commission's policy statements regarding § 3582(c)(2) are set forth in U.S.S.G. § 1B1.10. See U.S.S.G. § 1B1.10 cmt. background. U.S.S.G. § 1B1.10(a)(2) provides:

> A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if –
>
> (A) None of the amendments listed in subsection (c) is applicable to the defendant; or
>
> (B) An amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline

8

range.

U.S.S.G. § 1B1.10(a)(2).

Amendment 706 is listed in subsection (c). Although Amendment 706 would have lowered John Doe's initial sentencing range calculated under U.S.S.G. § 5A (the sentencing table) from 151-188 months to 121-151 months, and Jane Doe's initial sentencing range from 121-152 months to 97-121 months, the amendment did not lower either of the Appellants' mandatory minimum sentences. The District Court correctly identified the flashpoint of controversy:

> Thus, the critical issue is whether the term "applicable guideline range" in § 1B1.10(a)(2)(B) refers to [the Appellants'] initial sentencing range . . . calculated under § 5A or [the Appellants'] guideline sentence of [life imprisonment or twenty years, respectively] calculated under § 5G1.1(b).

As we explain below, the term "applicable guideline range" in § 1B1.10(a)(3)(B) refers to the Appellants' Guideline sentences as set by the statutory mandatory minimum. As the Appellants' mandatory minimum sentences were not affected by Amendment 706, the Appellants are ineligible for a sentence reduction.

9

## III.

The Appellants advance six arguments on appeal, which we consider seriatim. First, the Appellants argue that their downward departures for substantial assistance to the government were, at least in part, "based on" the now-amended crack cocaine guidelines.

As discussed above, the District Court held, and we agree, that deciding this case solely on the second element of § 3582(c)(2) is appropriate and we therefore decline to address the Appellants' "based on" argument.

## IV.

Second, the Appellants argue that by requiring an amendment to "have the effect of lowering a defendant's applicable guideline range," the policy statement of U.S.S.G. § 1B1.10(a)(2) implicitly redefines the § 3582(c)(2) term "based on" and that the District Court's interpretation of § 1B1.10(a)(2) assumes that a sentence may be "based on" only one thing, in this case the mandatory minimum. The Appellants contend that this narrow interpretation of the policy statement conflicts with the broader terms and congressional intent of § 3582(c)(2) and therefore must be rejected. See Stinson v. United States, 508 U.S. 36, 45 (1993) (holding that the Sentencing Guidelines commentary is analogous to an agency's interpretation of its own legislative rule, and therefore is "authoritative unless it violates the

10

Constitution or a federal statute").

Specifically, the Appellants argue that a statute must be read with its ordinary meaning in mind. See United States v. Geiser, 527 F.3d 288, 294 (3d Cir. 2008) ("When determining a statute's plain meaning, our starting point is 'the ordinary meaning of the words used.'"). As the word "basis" has multiple meanings, including "a supporting layer or part," the Appellants argue that § 3582(c)(2) does not require that the subsequently lowered sentencing range be the sole or even the primary basis for the sentence.

Although there is often no one basis for a criminal sentence, the Appellants misread the District Court's opinion. The plain language of § 3582(c)(2) requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(2). The plain language of the statute, therefore, specifically incorporates the Commission's policy statements, including the policy statement requiring that the amendment have the effect of lowering the defendants's applicable Guideline range. U.S.S.G. § 1B1.10(a)(2). Additionally, 28 U.S.C. § 994(u) provides that "[i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment may be reduced." § 994(u). See also Braxton v. United States, 500 U.S. 344, 348 (1991) (citing § 994(u) and holding that "Congress has

11

granted the Commission the unusual explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect). Under the express statutory language of § 3582(c)(2) and § 994(u), the Commission's policy statements implementing retroactive sentence reduction are binding.

Not only did Congress intend to incorporate the Commission's policy statements into § 3582(c)(2), but the policy statement and § 3582(c)(2) are complementary. The first prong of § 3582(c)(2) requires that a defendant have been sentenced based on a sentencing range that has subsequently been lowered. The policy statement requires that the amendment must have actually had the effect of lowering the Guideline range. Although the policy statement is narrower, it certainly does not run contrary to § 3582(c)(2).

V.

Third, the Appellants argue that term "applicable guideline range" in U.S.S.G. § 1B1.10(a)(2) refers to the appellants' initial Guideline ranges, which were subsequently lowered by Amendment 706, and not their mandatory minimum sentences, which were not affected by the amendment. We disagree. Both the Guideline language and Third Circuit precedent require otherwise.

Both the language and structure of the Guidelines lead to the conclusion that "applicable guideline range" in §

12

1B1.10(a)(2)(B) refers to the Appellants' Guideline sentence, calculated under § 5G1.1(b). First, U.S.S.G. § 1B1.1, the Commission's general instruction on how to apply the Guidelines, specifies that applying a mandatory sentence pursuant to § 5G1.1(b) is the last step in determining the Appellants' applicable Guideline sentence. The Sentencing Commission directs courts to apply the Guideline provisions in a specific order. First, a court determines the Guideline range. U.S.S.G. § 1B1.1(g). Then, a court calculates the Guideline sentence under chapter five of the Guidelines. U.S.S.G. § 1B1.1(h). This includes the calculation of the statutory mandatory minimums for both the Appellants under § 5G1.1(b). Therefore, as the District Court held, the calculation of the statutory mandatory minimum under § 5G1.1(b), not that of the initial Guideline range under § 5A, was the final step in determining the Appellants' applicable Guideline ranges. Moreover, the language of § 5G1.1(b) itself requires this result. It provides "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b).

In addition to taking guidance from the Guideline language, we addressed this issue in United States v. Cordero. In Cordero, the defendant pled guilty to various drug-related offenses. 313 F.3d 161, 162 (3d Cir. 2002). The applicable Guideline range for the defendant was 63-78 months, but the defendant was subject to a mandatory minimum of 120

13

months. After granting the government's motion for a downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), the district court sentenced the defendant to 86 months imprisonment. The district court used the 120 month mandatory minimum, rather than the otherwise applicable Guideline range, as the starting point for granting the downward departure. The defendant appealed, arguing that the district court should have applied the departure to the 63-78 month Guideline range, rather than the 120 month mandatory minimum.

The Cordero court held that in such a situation the mandatory period of incarceration is not waived, but rather "subsumes and displaces the otherwise applicable guideline range and thus becomes the starting point for any departure or enhancement that the sentencing court may apply in calculating the appropriate sentence under the guidelines." Cordero, 313 F.3d at 166. Although Cordero addresses the appropriate starting point for a downward departure rather than the interpretation of § 3582(c)(2), its reasoning is instructive. The rationale of Cordero requires that the term "applicable guideline range" in § 1B1.10(a)(2) refer to the Appellants' Guideline sentences as calculated under § 5G1.1(b) because that sentence subsumed and replaced their initial sentencing ranges calculated under § 5A. Although the Appellants' initial Guideline ranges were lowered by Amendment 706, their initial ranges are no longer applicable because the Appellants were subject to a mandatory minimum. The initial ranges have been subsumed.

14

Accordingly, Amendment 706 does not have the effect of lowering the Appellants' applicable Guideline ranges because the mandatory minimums were unaffected by Amendment 706.

The Guidelines' Application Notes to § 1B1.10 also support this reasoning:

> [A] reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if . . . an amendment listed in subsection (c) is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision **(e.g., a statutory mandatory minimum term of imprisonment**).

U.S.S.G. § 1B1.10 cmt. 1(A) (emphasis added). See also United States v. Poole, 550 F.3d 676, 679 (7th Cir. 2008) ("The Application Note confirms that Amendment 706 does not have the effect of lowering [the defendant's] guideline range because the range applicable to her by operation of law was the statutory minimum term."); United States v. Williams, 551 F.3d 182, 186 (2d Cir. 2009) ("We are bound by the language of [U.S.S.G. § 1B1.10, application note 1] because Congress has made it clear that a court may reduce the terms

15

of imprisonment under § 3582(c) only if doing so is 'consistent with applicable policy statements issued by the Sentencing Commission.'"); United States v. Johnson, 517 F.3d 1020, 1024 (8th Cir. 2008) (same).

In essence, the Appellants' argument turns on the relationship between "applicable guideline range" and "guideline sentence." U.S.S.G. § 5G1.1(b) requires that a mandatory minimum greater than the applicable Guideline range shall be the *Guideline sentence* and § 1B1.10(a)(2)(B) excludes a reduction if an amendment does not have the effect of lowering a defendant's *applicable guideline range*. The Appellants argue that the term "applicable guideline range" cannot refer to the Guideline sentence because the Guidelines create a distinction between the terms. The simplicity of this argument is appealing, but nevertheless it is dispelled by the clear import of the § 1B1.1 order for sentence determination, the language of § 5G1.1(b),  the commentary to § 1B1.10 and our holding in Cordero.

The key term is "applicable" Guideline range, rather than "initial" Guideline range. Because the Appellants' mandatory minimum sentences under § 5G1.1(b) subsumed and displaced their initial Guideline ranges, the applicable Guideline range for purposes of § 1B1.10(a)(2)(B) must be the Appellants' mandatory minimum sentences, which were not affected by Amendment 706. See also United States v. Moore, 541 F.3d 1323, 1330 (11th Cir. 2008) (holding that a defendant is not eligible for resentencing under § 3582(c)(2)

16

where "a retroactively applicable guideline amendment reduces a defendant's base offense level, but does not alter the sentencing range upon which his or her sentence was based").

## VI.

Fourth, the Appellants argue that the District Court erred in treating the Sentencing Commission's policy statements as binding after United States v. Booker. In Booker, the Supreme Court re-affirmed that the Sixth Amendment is violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. 543 U.S. at 229, 244. The Court concluded that this constitutional holding was incompatible with the mandatory nature of the Sentencing Guidelines and remedied the defect by severing the statutory provisions that made the Guideline range mandatory. Id. at 245; see Gall v. United States, 128 S. Ct. 586, 594 (2007).

Nowhere in Booker did the Supreme Court mention § 3582(c)(2). Because § 3582(c)(2) proceedings may only reduce a defendant's sentence and not increase it, the constitutional holding in Booker does not apply to § 3582(c)(2). See Booker, 543 U.S. at 244. Additionally, the remedial holding in Booker invalidated only 18 U.S.C. § 3553(b)(1), which made the Sentencing Guidelines mandatory for full sentencings, and § 3742(e), which directed appellate

17

courts to apply a *de novo* standard of review to departures from the Guidelines. Therefore, Booker "applies to full sentencing hearings – whether in an initial sentencing or in a resentencing where the original sentence is vacated for error," but not to sentence modification proceedings under § 3582(c)(2). United States v. Dunphy, 551 F.3d 247, 253 (4th Cir. 2009); see also United States v. McBride, 283 F.3d 612, 615 (3d Cir. 2002) (citing United States v. Faulks, 201 F.3d 208, 210 (3d Cir. 2000)) (distinguishing a "full resentencing" from a reduction of sentence under § 3582(c)(2)).  Not only are sentence modification proceedings sanctioned under a different section of the statute than those at issue in Booker, but the Booker court held that "[w]ith these two sections excised (and statutory cross-references to the two sections consequently invalidated), the remainder of the Act satisfies the Court's constitutional requirements." Booker, 543 U.S. at 259. "Section 3582(c)(2) contains no cross-reference to § 3553(b) and therefore was not affected by Booker. Nor is there anything else in Booker that directly addresses § 3582(c) proceedings." Dunphy, 551 F.3d at 253; see also United States v. Rhodes, 549 F.3d 833, 839-840 (10th Cir. 2008) (holding that Booker's remedial holding does not operate on § 3582(c)(2) and that Sentencing Commission Policy Statements are binding on district courts pursuant to § 3582(c)(2)) .

In addition, this Court has previously rejected the notion that Booker renders the Guidelines advisory for purposes of § 3582(c)(2). In United States v. Wise, the

18

defendants were convicted and sentenced for a crack offense before Amendment 706 became retroactive. 515 F.3d at 221. U.S.S.G. § 1B1.10 provides that a reduction under § 3582(c)(2) is not authorized unless the amendment is currently retroactive. The defendants in <u>Wise</u> argued that because the Guidelines were no longer mandatory, they need not wait for Amendment 706's retroactivity to apply to seek relief under § 3582(c)(2). This Court said,

> That fundamentally misunderstands the limits of <u>Booker</u>. Nothing in that decision purported to obviate the congressional directive on whether a sentence could be reduced based on subsequent changes in the Guidelines. As we have stated before, '[t]he language of the applicable sections could not be clearer: the statute directs the Court to the policy statement, and the policy statement provides that an amendment not listed in subsection (c) may not be applied retroactively pursuant to 18 U.S.C. § 3582(c)(2).'

<u>Id.</u> at 221 n.11 (citing <u>United States v. Thompson</u>, 70 F.3d 279, 281 (3d Cir. 1995)).

Although <u>Wise</u> considered the mandatory nature of the Guidelines in a slightly different context, its reasoning is entirely applicable here. Nothing in <u>Booker</u> purported to

19

obviate the congressional directive in § 3582(c)(2) that a sentence reduction pursuant to that section be consistent with Sentencing Commission policy statements. The language of § 3582(c)(2) could not be clearer: the statute predicates authority to reduce a defendant's sentence on consistence with the policy statement, and the policy statement provides that a reduction is not consistent if the amendment does not have the effect of lowering the defendant's applicable Guideline range. "The Guidelines are no longer mandatory, but that does not render optional" statutory directives. Id. at 220.

Admittedly, the Ninth Circuit, in United States v. Hicks, held that Booker abolished the mandatory application of the Sentencing Guidelines in all contexts. 472 F.3d 1167, 1169 (9th Cir. 2007). We, however, associate ourselves with the reasoning of the Tenth, Eighth, and Fourth Circuits in rejecting Hicks.

> "The problem with the Hicks decision, in our view, is that it failed to consider that . . . sentence modification proceedings have a different statutory basis than original sentencing proceedings. As a result, the Ninth Circuit erroneously concluded that the remedial portion of the Booker decision, which rendered the guidelines effectively advisory for purposes of original sentencing proceedings, applied to § 3582(c)(2) proceedings as well."

20

Rhodes, 549 F.3d at 841. See also United States v. Starks, 551 F.3d 839, 841-842 (8th Cir. 2009) (disagreeing with Hicks and concurring with Rhodes that sentence modification proceedings have a different statutory basis than original sentencing proceedings); Dunphy, 551 F.3d at 254 ("We find the Hicks analysis to be flawed because it fails to consider two marked characteristics of a § 3582(c)(2) proceeding . . . : (1) this proceeding allows only for downward adjustment and (2) this proceeding is not a full resentencing hearing.").

Because U.S.S.G. § 1B1.10 is binding on the District Court pursuant to § 3582(c)(2), the District Court correctly concluded that it lacked the authority to further reduce the Appellants' sentences.

VII.

Fifth, the Appellants argue that the District Court opinion compels patently absurd and unfair results. Specifically, the Appellants argue that: 1) defendants subject to a mandatory minimum, but with higher offense levels or criminal levels that boost their applicable Guideline range above the mandatory minimum, would be eligible for a § 3582(c)(2) reduction, while an offender with a lower criminal history level or lower offense level, whose Guideline range is less than the mandatory minimum, would not be eligible for relief; 2) defendants who plead guilty and cooperate with the government will not be entitled to the benefit of the amended

21

Guideline range; and 3) substantial assistance departures reward assistance, but do not address the crack/powder cocaine disparity and therefore fail to remedy that injustice. We find the Appellants' arguments unpersuasive because they ignore Cordero and the clear statutory directive of § 3582(c)(2).

## VIII.

Finally, the Appellants argue that the District Court erred in denying their motions for sentence modification by failing to apply the rule of lenity. In interpreting an ambiguous criminal statute, the court should resolve the ambiguity in the defendant's favor. See United States v. Introcaso, 506 F.3d 260, 261 (3d Cir. 2007). The rule of lenity applies in "those situations in which a reasonable doubt persists about a statute's intended scope even after resort to 'the language and structure, legislative history, and motivating policies' of the statute." United States v. R.L.C., 503 U.S. 291, 305-306 (1992) (citations omitted). The rule is not properly invoked simply because a statute requires consideration and interpretation to confirm its meaning. Muscarello v. United States, 524 U.S. 125, 138 (1998). It applies only if there is such "grievous ambiguity or uncertainty" in a statute that, "after seizing everything from which aid can be derived, [the Court] can make no more than a guess as to what Congress intended." Id. at 139 (internal quotation marks, citations and ellipsis omitted). See also

22

Steele v. Blackman, 236 F.3d 130, 133 (3d Cir. 2001) ("Where the language of a statute is clear . . . the text of the statute is the end of the matter.").

In this case, the phrases "based on" and "the effect of lowering the defendant's applicable guideline range" need to be interpreted, but consideration of the language structure, subject matter, context and history of § 3582(c)(2) and U.S.S.G. § 1B1.10(a)(2) establishes that they do not contain such an ambiguity that the Court can make no more than a guess as to what Congress intended.

IX.

In providing that sentence reductions must be consistent with applicable Sentencing Commission policy statements, § 3582(c)(2) creates a jurisdictional bar to sentence modification when a retroactive amendment does not have the effect of lowering the Guideline sentence. As Amendment 706 did not have the effect of lowering the Appellants' mandatory minimum sentences under § 5G1.1(b), the Appellants fail to satisfy the second element of § 3582(c)(2) and are therefore ineligible for a sentencing reduction under that section. The decision of the District Court will be affirmed.

23

Fuentes, <u>Circuit Judge</u>, concurring:

I concur in Judge Aldisert's well-crafted and thorough opinion. However, I write separately to note that our interpretation of U.S.S.G. § 1B1.10 implicitly rests on the assumption that there can be only one guideline range applicable to a defendant. For the reasons that follow, I am not sure that assumption is correct.

The key question in interpreting § 1B1.10(a)(2)(B) is what "the defendant's applicable guideline range" is where a defendant, subject to a statutory mandatory minimum, receives a downward departure below that minimum based on his or her substantial assistance to the government. The term "applicable" is an expansive one: the plain meaning of "to apply" is "to put to use" or "to bring into action." <u>Merriam Webster's Collegiate Dictionary</u> 57 (10th ed. 1996). There is no dispute that the District Court did indicate that it was using the Does' § 5A Guidelines ranges in deciding the extent of their substantial assistance departures. Moreover, that approach was permissible under our precedent, which allows a district court to consider the seriousness of a defendant's offense—often reflected in the § 5A Guidelines range—in determining the extent of a substantial assistance departure. <u>See</u> <u>United States v. Casiano</u>, 113 F.3d 420, 431 (3d Cir. 1997).[1]

---

[1] We are alone in this approach; all other circuits to have addressed the issue have held that the maximum extent of a substantial assistance departure may be based only on the defendant's substantial assistance. <u>See</u> <u>United States v. Desselle</u>, 450 F.3d 179, 182 & n.1 (5th Cir. 2006) (and cases cited

Therefore, the plain meaning of § 1B1.10 would suggest that John and Jane Doe are eligible for resentencing because their original Guidelines ranges were applied in calculating their original sentences and those ranges were subsequently lowered by the crack cocaine amendment. Such a result makes sense since the District Court might indeed have granted a greater departure had it had the benefit of the modified Guidelines ranges at the time of the original sentencing.[2] Cf. United States

---

therein) (holding that the magnitude of a substantial assistance departure may reflect only "assistance-related concerns"). Accordingly, other circuits have held defendants like the Does to be ineligible for resentencing because their original Guidelines ranges cannot be applied in determining the size of a substantial assistance departure. See, e.g., United States v. Williams, 551 F.3d 182 (2d Cir. 2009) (refusing to allow the resentencing of a defendant under § 1B1.10 where the defendant had received a substantial assistance departure from a mandatory minimum sentence). However, that divergence in the application of § 1B1.10 is simply the inevitable result of a difference in our sentencing doctrine. See United States v. McGee, 553 F.3d 225, 228 n.2 (2d Cir. 2009) (acknowledging that the holding in Williams was predicated on the Second Circuit's rule that the maximum extent of a substantial assistance departure may not take into account anything besides the defendant's substantial assistance to the government).

[2] The applicability of a sentencing range other than the mandatory minimum is even more noticeable in the not uncommon circumstance where a district court specifically

-2-

v. McGee, 553 F.3d 225, 228 (2d Cir. 2009) ("Since, from our reading of the sentencing transcript, the district court sentenced [the defendant] based on the crack cocaine guidelines and would likely have considered a different sentence from the one imposed if the applicable crack guidelines had so provided, we think that [reading § 1B1.10 to bar resentencing] would lend itself to excessive formalism.").

Judge Aldisert, by contrast, reasons that the original Guidelines range could not have been the applicable guideline range in this case because a mandatory minimum "subsumes and displaces the otherwise applicable guideline range" initially calculated under U.S.S.G. § 5A. United States v. Cordero, 313 F.3d 161, 166 (3d Cir. 2002); see also U.S.S.G. § 5G1.1(b). However, Cordero, U.S.S.G. § 1B1.1, and § 5G1.1(b), the authorities relied upon by the majority, describe the sentencing procedure before the consideration of a substantial assistance departure motion. U.S.S.G. § 1B1.1 and § 5G1.1(b) direct a sentencing court to apply a mandatory minimum sentence rather than the § 5A Guidelines range if the former is greater. Yet that is not the final step of a sentencing where, as here, the District Court has brought the initial Guidelines range back into the picture in determining the extent of a downward departure from that mandatory minimum.[3] Similarly, Cordero stated that a

departs by a certain number of offense levels.

[3] Notably, § 5G1.1(b) actually refers to the initial sentence calculated under § 5A as "the applicable guideline range." While this by no means indicates that the initial Guidelines range remains "applicable" if a sentencing judge

mandatory minimum sentence "subsumes and displaces the otherwise applicable guideline range" when § 5G1.1(b) is applied "and thus becomes the starting point for any departure or enhancement that the sentencing court may apply in calculating the appropriate sentence under the guidelines." 313 F.3d at 166 (emphasis added). While the mandatory minimum is therefore the "starting point" for a substantial assistance departure, Cordero says nothing as to whether the initial Guidelines range may once again become applicable in the process of determining the extent of a substantial assistance departure.

Application Note 1(A) to § 1B1.10 is likewise irrelevant here. Although it offers the example of "a statutory mandatory minimum term of imprisonment" as a provision that might operate to keep an amendment from "hav[ing] the effect of lowering the defendant's applicable guideline range," it does not speak to the case where the application of a statutory mandatory minimum is followed by a substantial assistance departure. See United States v. Sash, 396 F.3d 515, 523 (2d Cir. 2005)

---

applies a mandatory minimum and stops there, it does suggest that "applicable guideline range" is meant to be descriptive of the reality of the sentencing process rather than a formal term referring to the range that results after the application of § 1B1.1(h). The "applicable guideline range" may evolve as the sentencing proceeds: prior to the steps described in § 1B1.1(h) it is the § 5A range, after § 1B1.1(h) is followed it may be a mandatory minimum, but after the calculation of applicable departures under § 1B1.1(i) the term may expand to include a range that is in fact part of the process of granting a departure.

-4-

(noting that "a Guideline may apply in situations not contemplated by the background commentary to the Guideline," and in such cases "what matters is the plain language" of the Guideline itself).

Therefore, the majority's construction of § 1B1.10 holds only if it is read to allow for only a single "applicable guideline range" and the mandatory minimum is deemed to be that range. I ultimately concur in that interpretation, but for different reasons than those cited by the majority.

The plain language of the policy statement does suggest that the Sentencing Commission envisioned only a single applicable range given its reference to "the applicable guideline range" rather than "an" applicable range. While the use of this article might be a fairly weak sign of the Commission's intent on its own, the provision's wording is bolstered by a potentially reasonable justification for an approach that isolates a single "applicable guideline range." Were § 1B1.10 read to allow resentencing any time any Guidelines range applied to a defendant was subsequently reduced by a retroactive amendment, it could open the door to resentencings where the modified range played only the most tangential role in determining the defendant's sentence. If the Sentencing Commission's goal was indeed to avoid that result, the best candidate for the Does' "applicable" guideline ranges here would seem to be their mandatory minimum sentences, as Cordero does deem an applicable mandatory minimum to be the "starting point" for the substantial assistance departure.

This language is enough to prevent the application of the rule of lenity, which would require us to construe § 1B1.10 in

favor of Appellants. As the Supreme Court has previously held and recently confirmed, the rule of lenity is to be invoked only in cases of "grievous ambiguity." Huddleston v. United States, 415 U.S. 814, 831 (1974) (quoted in United States v. Hayes, 129 S. Ct. 1079, 1089 (2009)). Here, we have a specific sign of the Sentencing Commission's possible intent in its wording of the policy statement, and may rely on that rather than a general rule of statutory construction.

Still, § 1B1.10's wording is a frail basis for an interpretation that would produce the troubling result, verging on absurd, of allowing worse defendants a chance at reduced sentences while depriving less serious offenders of the same opportunity. For example, a defendant with a Guidelines range higher than the mandatory minimum because of an offense involving a significant quantity of crack cocaine who received a departure to below the minimum would be eligible for resentencing under the District Court's understanding of § 1B1.10, whereas a defendant with an initial Guidelines range below the mandatory minimum because of an offense involving a smaller quantity of crack would not get the same opportunity even if he also received a departure to below the mandatory minimum. (Appellants' Br. 31.) Such consequences are particularly unnecessary since the goal of confining resentencings to cases where a subsequently lowered Guidelines range played a significant role in the original sentence would be equally well-served by a different method: even if a defendant is deemed eligible for resentencing, district court judges may simply use their discretion under § 1B1.10(b) to find a lower sentence unmerited where the altered Guidelines range was only remotely relevant in determining the defendant's term of

imprisonment.

Additionally, at least some of the Sentencing Commission's staff authored a study of the consequences of applying Amendment 706 retroactively in which they assumed that defendants who had received a substantial assistance departure from a mandatory minimum would in fact be eligible for resentencing. See Glenn Schmitt et al., Analysis of the Impact of the Crack Cocaine Amendment If Made Retroactive 5-6 (2007), http://www.ussc.gov/research.htm (cited in United States v. Williams, 549 F.3d 1337, 1340 (11th Cir. 2008)). While I am unsure what weight to give this source, it does raise some questions as to how the Commission intended § 1B1.10 to be applied.

Finally, the majority does not differentiate the Does' circumstances from those of another category of defendants whom some courts have ruled eligible for resentencing under § 1B1.10: defendants who received departures under U.S.S.G. § 4A1.3(b) based on the sentencing judge's determination that their classification as career offenders represented an overstatement of their criminal history. See, e.g., McGee, 553 F.3d 225; United States v. Poindexter, 550 F. Supp. 2d 578 (E.D. Pa. 2008); United States v. Ragland, 568 F. Supp. 2d 19 (D.D.C. 2008); see also U.S.S.G. § 1B1.1 cmt. n.1 (describing both types of departures as methods for imposing sentences "outside the applicable guideline range"). In both circumstances, the mandated sentence is deemed inappropriate and the initial Guidelines range may play a role in determining the proper sentence, rendering it an "applicable" range.

Given these considerations, I express some discomfort

with our interpretation of § 1B1.10. While its language barely favors the majority's interpretation, I am unsure whether our reading of the policy statement truly reflects the intent of its drafters. Therefore, while I concur with my colleagues' ultimate conclusion that John and Jane Doe are ineligible for resentencing, further guidance from the Sentencing Commission on this question would not go amiss.